I will now call the cases of Sun Life Assurance Company of Canada and Imperial Holdings. Good morning. Good morning, Your Honor. May I please the court? My name is Jason Gosselin. I represent Sun Life Assurance Company of Canada. We have two appeals today. I'm going to focus now on Sun Life's appeal. When I come back, I will address the responses and Imperial's appeal. Two points that I want to make, primarily. The dismissal of Sun Life's fraud and civil racketeering claims was error because the judge relied on the contestable clauses in the policies, but the defendant on those claims, Imperial Holdings, Inc., was not a party to those contracts. Number two, I'm going to come back and talk about the dismissal of the declaratory judgment claim. For now. If they were not a party, and that helps you on that first argument, how do you get declaratory judgment against them for violating what the policy said they shouldn't be doing? The Imperial Holdings, Inc. was the defendant on the fraud and civil racketeering claims. The actual policy owners, separate LLC entities, were the record owners of the policies. They were the defendants on count seven, which was the declaratory judgment. Imperial Holdings was not a defendant to that count? No, it was not. It is not a policy owner. It never has been a policy owner. In fact, Imperial Holdings, Inc., by design, the design of the scheme kept them out of the picture. In your complaint, there are references to Imperial being the owner. I don't mean that in a legal sense, but being the owner of the policies, right? We did short sight Imperial, and we looped the defendants in, but we actually specifically identified Imperial Holdings, Inc. as the defendant on the damages claims, and the LLCs as the defendants on the declaratory judgment claim as the policy owners. We raised standing on the motion for summary judgment. The district court never addressed it. Imperial Holdings didn't really address it. I don't recall that they addressed it, but it was not something that was ever part of the judge's decision from the bench. We raised it again on appeal in this case, and the only response that we've ever gotten to explain how they could possibly have standing is they now claim that Imperial Holdings was an undisclosed principal of the actual policy owners. That argument is flawed for two reasons. First of all, to the extent that Florida recognizes that doctrine, I've not seen any case where the Florida Supreme Court has adopted that section of the restatement, but to the extent that it applies here, under the restatement, the right to act on behalf of an undisclosed principal can be limited by the contract itself. In this case, the contract is clearly limited and would not permit an undisclosed principal. Once there was a transfer, though, to the new entities, at that point, why weren't they principals and agents? Imperial and the ultimate purchasers of the insurance. The original owners were trusts, and mind you, Sun Life alleged that Imperial Holdings orchestrated this whole scheme from behind the scenes. The original owners were trusts. The ownership was changed to these various LLCs that were also being orchestrated by Imperial, according to our allegations, but the policies say that all rights of ownership exclusively reside in the record owner, and it's possible to transfer that to somebody else. You can't assign those rights, but that assignment is only effective once you provide notice of the assignment to Sun Life in its home office. They never did that. That never happened. We think there's a good reason why it didn't happen, but there was never an assignment, so they never did what they needed to do in order to create this undisclosed principal. Second, they're asking the court to accept that they were an undisclosed principal, and that's something that was never addressed in the district court, so there are no facts anywhere from which the court might be able to establish that they, in fact, were undisclosed principals. We never had the chance to probe that or to test it. They're simply asking you to accept it. We submit that that's a contrivance designed now to avoid this problem that they have. Assuming you do not prevail on that, then we get to the question of the incontestability clause. Is that right? and just applied the Florida law to this question following Martinez, but your point, I guess, is that Martinez actually engaged in a choice of law analysis, which you think the judge should have done here with regard to all of the various jurisdictions that were implicated. That's exactly true. In Martinez, the Martinez court said that the contestable clause will bar a claim for fraud, and I want to address that, but the Martinez court did say that, but it said if there was a claim that the policies lacked an insurable interest, or actually that's all it said, if it lacked an insurable interest, the analysis wouldn't apply because if the policy is void ab initio, there is no contestable clause. And there were no claims in that case that the policies lacked an insurable interest. Count seven against the policy owners, that's all that claim was. The policies lacked an insurable interest, conceivably, if Sun Life were to prevail on that, and the policies or some of them are void ab initio, there is no contestable clause, so that would not be a bar of any kind. Let me ask you that. Does a declaratory judgment claim that they lack an insurable interest depend upon the actual transfer in some way later on of the claim from the original trust to the acquirers after the two years? Because at that point, it becomes a wagering bet. Essentially. I would state it slightly differently. If the purpose of the policy from the outset was to wager on human life, it offends public policy, and in many states, not all, there's a decision in the Florida Supreme Court that didn't exist when we filed that lawsuit, but there were 28 policies from multiple states, and policy validity is governed by the state in which the contract was formed. So you have to do a state by state analysis to determine whether an individual policy is valid or not. And count seven was dismissed at the pleading stage. We had a 110-page complaint laying out all of the reasons, all of the allegations as to why these policies were wagering contracts, but there wasn't enough in that complaint, there wasn't anything in that complaint from which the court could do a choice of law analysis. So that claim, none of the claims should have been dismissed, but certainly that one should not have been dismissed. On the other claims, you agree, I think, that Florida law applies. Your RICO and fraud claims. Well, RICO is RICO. The fraud claims, yes. You could be applying some other state's RICO position. That was a federal RICO claim, that's all. But as far as the contestability clause's applicability to that, that's an open question between the jurisdictions, right? Well, we have a couple of, there are two reasons why we think the contestability clause would not have barred those claims. Right, but the district judge held that they did. The contestability clause did, and at the very least, from your perspective, he didn't do a choice of law analysis. Yes, absolutely. Even under, so clearly you have to do the choice of law analysis before you can determine, like the Martinez court did, whether it bars a claim or not. I mean, you have to do that as a minimum. Martinez was a little bit different than what we have here. This is a damages claim. Sun Life issued these policies unknowingly, but they told the market, they told Imperial, regardless of whether this is legal or illegal, it's not a market we want to participate in. The only way Imperial could acquire these policies is through fraud in the application. Even if these policies are deemed valid because we happen to be in a state where you can't void them, or they're not void because they violate public policy, even if all of them were in a state like that, we would still say we've suffered profitability damages as a result of this block. That's too broad for the incontestability clause. It couldn't possibly reach that. That's exactly what we're saying. I'm not sure that every state agrees with you on that. I don't know that there's much law that says you can't do that. Martinez says that you can't bring a damage claim as kind of an end run around the contestable clause. It would be improper to say, okay, we can't challenge this policy. Here's your death benefit. We're now going to sue you in damages for the amount of that death benefit. We concede you can't do that. To that point, isn't there at least one reference in your filings in the district court where you said that the measure of damages was going to be the death benefit? Yeah. We have sort of a, in our complaint, we have kind of a catch-all, to be candid. I mean, I don't know that we would be able to get there. No, no. I'm not asking you whether you win. I'm just asking you whether you have claimed in the district court that the measure of damages that you're entitled to if you win is the death benefit that you pay on these policies. There was a reference to that. If that's the case, why isn't there a much stronger argument that the incontestability clause applies? It would be different if you said, for example, and I speak only for myself, if you had said, assuming we win on the merits, assuming we have stated a claim and we win and Imperial engaged in cognizable fraud and RICO and all of that, if you said, had these policies been issued to normal, quote unquote, policy holders, we would have earned more money on the policies because they would have triggered or used a guaranteed income or guaranteed interest portion of the policy. That would have triggered a higher premium to us. We would have earned this much profit on the policy during its life, and that's the measure of damages. But at the end of the day, we got to pay the policy. The incontestability clause applies. And when that person who was initially insured dies, we have to pay out the death benefit. But we're entitled to the profit we would have made on those policies between now and then. But you went beyond that. You said in part, and I'm not saying it's the whole ball of wax, but you said in part that you were going to try to get the death benefit. And if you're trying to do that, it starts sounding, at least to me, like you really are trying to get around the incontestability clause through a different name and a different type of claim. Our primary damage claim is exactly what you just said. The testimony from our damages person is that we underwrote these policies as consumer-owned policies. We expected this much revenue to come in, and we pay out this many liabilities. And because they were investor-owned, they behaved differently, and now the revenue coming in is less. The damage amount is the amount of money that we don't have to pay out these liabilities. Then why did you seek or tell the district court at some point that you wanted to recover the death benefits? Because when we filed the complaint with Count 7, the strong possibility existed that that claim would go forward at least in some part. And if a claim comes in and the policy is void, we wouldn't have to pay that death benefit. You're the master of your own complaint. You decide what risk to take in litigation and what claims to put forward and how far to stretch out your neck. But the theory of our case is very, very clear in that complaint. I'm suggesting to you that you made things a lot more difficult for yourself, because when you start telling the district court, at least in part, that what you're trying to get at the end of the day is the benefit that you'll ultimately pay out, and that's exactly what the incontestability clause is supposed to get at, generally speaking, your claim starts looking a whole heck of a lot different. Fair enough, and I accept that. What I'm hoping to explain is that we do agree that if one or two or three or more of these policies were deemed invalid, that would affect the damages calculus because... But you can't find them invalid. No, no, no. If Count 7 went forward and some of them were deemed void ab initio because they were considered wagering contracts under the law of New Jersey, for example. Got it. So if that future death benefit is taken out of the calculation, then it does affect the amount of lost profitability that we would be able to recover because we wouldn't be paying out that death benefit. Complaints sometimes are not as artful as closing arguments, but that's sort of what we're trying to get at. Thank you. Thank you. Thank you, Judge Martin, and may it please the court. Miguel Estrada for the Imperial Entities. The day after the district court entered its very last ruling in these cases, the Supreme Court of Florida decided the Pruko case. So for the entire life of this litigation, the district court did not have the benefit of the Pruko case. What it had was the Sun Life entities embracing Judge Cohn's opinion in Pruko in the Southern District of Florida, which had reached a contrary position and was repudiated by the Supreme Court of Florida in their argument in the motion to dismiss. Now that Pruko has been decided after the case was over in the district court, Sun Life has been doing cartwheels in the court of appeals to try to recast its case on appeal as something very different from what it was in the district court, trying to come up with new theories and trying to shop for new alternative sources of law that might be more kind to its causes of action. In fact, Pruko rejects each plank of the arguments of Sun Life as originally brought, makes clear that policies such as those are issued in these cases, the so-called Stolley policies, when structured, Sun Life itself alleges they were structured here. That is to say, when there was a trust for the beneficiary of a next of kin that was in effect for a couple of years, so that if the insured had died a year into the policy, the next of kin would have benefited from the policy. Those policies have an insurable interest at exception and therefore are valid under Florida law. And in addition, Pruko also holds, because it was clear in Pruko that there were outrageous fraud in the application, there were blatant lies in the applications, that even a clear case of fraud in the application, and even in a Stolley case, cannot overcome the incontestability clause. So therefore, Pruko is fatal to the cases that Sun Life brought as the case was litigated in the district court. It assumes, does it not, that the incontestability clause question can be determined by one jurisdiction's laws? I was heading there, Judge Walker, because one of the points on appeal is this whole notion that a key error of the district court was not to commit, not to engage in a choice of law analysis. And, you know, we all read Claxton. I think most of us read it in first year law school. And of course, you know, the job of the Court of Appeals is to fix errors. But you will scour the record in vain looking for any choice of law analysis that was ever proffered by Sun Life. Now, this is sort of important in this case, because let me remind you that Sun Life sued- Martinez, right? No, but, yes, but in Martinez- In Martinez, there was a choice of law analysis. Well, of course, in courts, when asked to do a choice of law analysis, of course they perform it. I am not saying that a choice of law analysis could not have been performed here under Claxton. I am saying that Sun Life was the master of its complaint. Sun Life, as you just heard, brought an action in Count 7 for a declaration that all of these listed policies were void of an issue. Under Rule 11B2, a lawyer signing a pleading is representing that the relief is warranted by existing law or by a reasonable extension of existing law. Therefore, there had been some investigation by Sun Life as to what law might possibly govern its own claim. Nevertheless, in response to a motion to dismiss, Sun Life said, we don't know what law might govern these claims. We'll find out later, but let me argue the Pruco case from southern Florida to you. I think in these circumstances, where the party who later claims there was an error in failing to engage in an analysis that otherwise would have been required and appropriate, fails to profit when it was his burden to identify the law that governed its own claim, the district judge was perfectly entitled to then refer to the source of law that the party itself was embracing in the only substantive argument that the party actually tendered. How many different, if you know, how many different states were the policy holders in Count 7 from approximately? We're talking two or three states, dozens? Let me be accurate with respect to the numbers because there's an overlap in the complaints. When Sun Life first sued, it listed 28 policies. By the time of the second amended complaint, there were 23 policies at issue. Of the 23 policies, 12 of those list Florida residents. Two of them, three in addition, I think are two of Illinois and one in California, which are some of the states that are covered in Martinez anyway. The others are a handful of other states. Somehow the number 12 sticks in my mind. Yes, 12 are Florida. No, 12 jurisdictions. I don't think there are quite that many on the Sun Life complaint only, Judge Walker. But there was also a larger number of policies involved in the Imperial complaint. And an additional sort of fact that you may have gathered from the record is that Sun Life keeps claiming that there are 64 policies at issue. We know nothing of the additional policies beyond those that are actually listed in the complaints. Because the additional policies that they claim are at issue are simply listed in an Imperial response to interrogatories that was tendered in October 2013. I think that's docket number 215-1. And Sun Life never followed up to put any evidence as to anything about those policies. So there was nothing in the record about those policies whatsoever. But to go back to the choice of law issue, not only did Sun Life affirmatively come into court asserting that these policies were void under some law that it refused to identify until later and has yet to identify. Let me add. But this is a very unusual circumstance because it's not as if Sun Life could not be expected to know the basic facts that he would need to tender a good choice of law analysis. As you pointed out in your Martinez case, under Florida law, the place where the policy is applied at by the applicant is usually the place of where the law will be applied. And if you look at Sun Life's own application forms, you will see that these will, of course, be in Sun Life's own files. All of the applications have signed at a place and the name of the applicant. There was a sample in our appendix. This is the Imperial Appendix, Volume 305, tab 472-1. And so it is inconceivable to me that Sun Life could come into court seeking a declaration, mind you, that all of these listed policies were void ad initio under law and refused to identify for the court what law it thought it actually applied, while then tactically arguing that it should win under the then extant law of Florida as it understood it. Now, this is tactical behavior. This is not an error on the part of the district court. And we know that because even on appeal, while purporting to identify an error on the part of the district court, Sun Life still has not told you what law actually applies and how its application to the facts of the case would lead to a different outcome than that identified in Pruco. Now, as we pointed out in our brief, one of the reasons for this is that even in those states where the law may be more favorable to Sun Life than Pruco, say, for example, the BHL case in Delaware, which, as far as I can tell, has no conceivable relevance to any policy in this case, you know, the slicing of the salami in that case is that these policies can be okay, but if the applicant insured had an intent at the time of application to transfer, then it's a wagering contract. Notice that Sun Life never pleaded anything about the intent of the applicants. And it is not clear to this day that it has anything it can plead about the intent of the applicants. It pleaded about the intent of the producers. But it doesn't have anything that it has proffered on the intent of the applicants, even on the record now. But having said all of that, point, basic point on the choice of law is they urged, you know, the application of Florida law. I concede that they keep saying, but we don't know which law applies. But at the end of the day, as the party suing for a declaration that the policies were void at initial under law, they had an affirmative obligation to investigate their claims and to proffer the relevant law. And because they never did that, and because they haven't done that to this point, they are not entitled to come and appeal and put the district court in error by claiming that the district court should have performed an analysis, that they had an obligation to perform themselves before filing suit, and which they have never tendered in the district court, nor have tendered even to you. That's it on choice of law. On the question of whether my client has standing, I think Judge Walker had the answer right off the bat. The provision that they have cited on the question of whether these policies could be transferred was complied with. And the policies, as they themselves alleged, were transferred to imperial subsidiaries. I think, as we pointed out in our brief, we are not claiming that we have standing because we own the policies. We have standing because by virtue of the conceded relationship to our subsidiaries, which is public and not really undisclosed, we are after all a public company. If you obey or follow the corporate form, to what extent can you, big imperial, rely on the incontestability clause as providing or the breach of it providing a right of action? I mean, at what point does privity matter, given that imperial holdings is not the title or record owner of the policies and is not a party to the insurance contracts? Well, there are two answers to that. As you pointed out, we have, because they are subsidiaries, we have the right to control, as in the principle, an agent. And the whole issue then is whether the corporate formalities have been observed, which is not really an issue as to our standing, nor has it ever been questioned. With respect to our own claims, they challenge our standing on a different claim, but we pointed out that there was evidence in the record that the claims under the policies had been actually assigned to the top company anyway. By way of what, one master document that assigned them, or on an individual basis? I missed that. There were oral assignments, and these were testified to, I think, in the 30B6 depositions. This is covered in the imperial side of the briefing on the imperial appeal. But that has to do with the assignment of the causes of action. In any event, ultimately, because this case, with respect to some of the claims, was dismissed at the pleading stage, and later some of the fraud claims after a full evidentiary record, part of what the district judge had in mind, and you cannot blame him, is that when Sun Life came into court, Sun Life affirmatively pleaded that Imperial, that is the top company, actually had ownership of the policies, and the district judge understandably thought that it could take Sun Life at its word and not have it contradict its own pleading. Now, Sun Life says, well, you later denied that, and you made clear that your ownership was through other corporate entities, but I think for the reasons I stated, given that we have the undisputed right to control them through appropriate corporate actions, that actually ultimately doesn't matter to our standing. There's one thing about whether this is really covered by the incontestability clauses that my colleague got into, and I think at the end of the day, apart from the fact that they're trying to run away from Pruko, they're also trying to cast the case differently in any other number of ways. At the end of the day, what incontestability clauses are about are disabling insurance companies from going after fraud in applications after two years, and the theory of these clauses is you have two years to investigate the application, and after that, hold your peace. In cases like Martina's show, that that goes also for not bringing RICO claims and not bringing any vetting claims and not bringing affirmative claims. What you call your theory of damages ultimately does not matter. Judge Jordan is right that they started out by saying that they wanted the premiums and the policies anyway, but that ultimately does not matter because under the policies as written, each of the insured had the right absolutely to transfer the policy to an investment entity the day after issuance, and they had no right to impede that. So they could have no legal claim to damages on the theory that they were planning on the policies never having been transferred because it appears under Florida law and the fees on the policies. I'm sorry. I thought their position was that they would never have issued the policies had they known what was going to happen. Well, no, their position was that they would never have issued the policies if they had known that they were going to be financed. Yes. Now, the point that I'm making is slightly different, which is that that may be true, but I could apply for life insurance today fully intending not to finance and change my mind one week from now, and if I'm a resident of Florida, I have a full legal right because, you know, the policy is property to assign it and sell it, and the insurance company has no contractual right to impede that. But if Imperial had been told that these policies were not going to be accepted if premium financed and then they went out and decided to operate a different way and arrange for policies to be taken out by individuals and then transferred and they did so while misleading Sun Life as to what the purposes were, then why wouldn't that be sufficient? Well, I don't know what the sufficiency. Well, sufficient to state the fraud claim, for instance. Well, I think if you plead facts, I mean, I will point out that the judge let go. If you're getting something that you couldn't get otherwise by misrepresenting, why isn't that a basis for a fraud claim? Judge Walker, I was about to partially agree with you by pointing out that the district judge let the fraud case go forward to summary judgment because in the complaint there were claims to that effect, and therefore he did not dismiss the fraud claims on the pleadings. However, on a full evidentiary record, it turned out that Sun Life was full of hot air. Although he continues to say that Imperial had involvement in all of these things, pre-issuance of the policies, what the record actually showed was the following, that there were producers that were contracted agents for Sun Life who would call the sales department of Imperial to say, would this type of policy be of interest to you? And the answer would be, yeah, it might be, with a disclaimer, we have no power to bind Imperial. We can only look at issued policies. Then if a policy was ultimately issued, it would go to Imperial, and this is all in the summary judgment record, that had a compliance and legal record. Was that the basis upon which the district court dismissed these claims on the summary judgment? I thought it was the incontestability clause. Yes, but I was answering your question that presupposed that there was actually a fraud, and I am dispelling. You know, I'm trying to get the impression, I think, that this was the basis upon which the district court. No, and if I do, I do apologize, Judge Walker, but I took your question as implying that there was a fraud, and all I'm saying is that I agree with you that one could allege that, but ultimately, although it did not matter, because as we know from Pruko, even a fraud is barred by incontestability. In this case, the summary judgment record, if you look at the pleadings in front of the court at summary judgment, did not bear out what Sun Life was actually saying. That's all I'm saying. Does your breach of contract claim based on the incontestability clause depend on whether or not Sun Life's claims are frivolous? In other words, if you had a valid- No. If you had an arguably valid basis to file suit after the two-year period, is there still a breach of contract? Yes. Thank you for letting me turn to our affirmative claim, because it seems to me that Pruko and Martinez together show that the district court was right with respect to the Sun Life aspect of this appeal, but we do think that the district court did commit error in concluding that the incontestability clause, even though a part of the contract, and even though not complied with by Sun Life, could not be breached in a way that damaged us. It seems to me that although the court was right that these types of clauses have been correctly described as in the nature of a statute of limitations, that is not to say that there are only a statute of limitations, and that the Florida code requires that they be included in each contract, presumably, so that they can be acted on like every other contract. If there were just a rule that was binding on the insurance company, the Florida legislature could have said, insurance companies may not do X. Having been included in the contract and having not been complied, it seems to me that they stand on the same footing as every other part of the contract. A party may, in good faith, sometimes believe that he's complying with the contract, but he may be wrong. Usually, good faith doesn't really have a lot to do with whether, at the end of the day, you complied with your obligations. Let me ask you the same question, slightly the same question that I asked Mr. Gosselin. Although the answer to whether or not you've got a valid breach of contract claim doesn't depend on the answer to this question, I'd still like to try to ask you about it. What is the measure of damages, generally speaking, from a breach of the incontestability clause? Is it the amount of attorneys' fees and costs that Imperial had to expend in defending the suit and showing, at the end of the day, that Sun Life was wrong and shouldn't have sued? Or do you get to go beyond that and, at some level, hook on to some loss of future profits scenario? We had two bases for damages under this part of our contract claim. We said, of course, fees, although we recognize that the American rule does not usually allow fees. Here, fees are for basically under the contract, not merely for winning. There is Florida case law, the Great War versus Lucent Technologies case from the Middle District of Florida, that points out that if you violate a contract, you can actually get the fees. That's actually not an infraction of the American rule. We had substantial fees in defending this case. We put in at least $12.5 million plus $4.5 million in borrowing costs for other costs in the litigation. That actually did cause substantial damages. In addition to the cost of defending this very protected, expensive litigation with a large insurance company, we also put in evidence of how the policies have been devalued. This aspect of our proof turns out the fact that, as I pointed out earlier, the insurance policy is a form of property that can be pledged and pleaded and used in other aspects. And we had an expert pointing out that we thought that there had been a devaluation in the value of the property to a measurable extent. But not the value of the policies at death. No, because we agree that what's at issue here is not, we don't agree because they don't agree, but we can assume arguendo that even if they pay, that's not the only value of the policy. As I finished just saying, the value of the policy also is part of a bundle of rights that includes being able to be pledged and have other uses before the person actually dies. And if an insurance company interferes with the value of the property as property, even while intending to pay the death benefit, that I think is a cognizable harm from the breach of the contract. And I know that I am sort of just a little bit... You argued your case. Well, I mean, you know, the court designated me as the appellee, so I'm getting a little bit less time, but I am happy to answer questions. You're getting less time than who? No, no, no, no. Less time to argue my own case affirmatively. Oh, yeah. But I think our case has been well briefed, and our basic point on it is fairly obvious, which is that if the Florida Supreme Court held in Westside EKG that even a provision in the insurance code that is not required to be in a contract can be enforced in a contract action, it seems to us a fortiori that when the Florida legislature say that the contract has to include the provision in question, and the provision in question has clearly been violated and caused damages of $16 million in attorney's fees alone, there has to be a remedy that is provided by the contract law of the state of Florida. Thank you, Your Honor. Mr. Estrada, I understood you were given 20 minutes. Was I wrong about that? I mean, I thought you put me on the clock. Yeah, but I thought my clock had already gone down already. Well, no, it has, but, I mean, both sides had 20 minutes. No, no, no. You just divided up. No, no, no, no. I didn't mean to say anything other than I spend more time rebutting their newly minted theorem than I had the opportunity to do my own case, though my own case has the simplicity of just being stated quickly. Thank you, Your Honor. I want to begin with something that Judge Walker referred to and what the district judge found. The district judge did not find that there was no fraud. In fact, it's very well established that Imperial was involved from the get-go. They orchestrated this whole thing. Judge Brennan acknowledged that. And, in fact, Imperial has entered into a non- We only knew about this because they were the subject of an FBI raid and a criminal investigation, and they resolved that criminal investigation with a non-prosecution agreement where they paid an $8 million fine, and they actually agreed to get out of the premium finance business. So these aren't newly minted theories. These are things that we became aware of because we read about what they were doing in the newspapers and then started to look at our block of policies. But some of the argument is that if you are right, and I have a two-part question. If you are right on Count 7, the law of some states tends to show that you might be able to void the policies ab initio, but you have to get into the state of mind or the intent of the initial policyholder. You would have to show it depends on the standard, but in some cases, yes. In some cases, yes, right? And so unless you introduced evidence of that with regard to those jurisdictions, you lose on those jurisdictions, do you not? Well, that claim never got to the evidentiary stage. That Count 7 was dismissed at the pleading stage, and our allegations in the complaint, there are specific allegations with respect to each and every policyholder, each and every policy and how it was from the outset something that was initiated and generated by Imperial and Imperial's people. And the purpose of it was to serve Imperial's desire to own policies in the secondary market, and there was never an intent to use the policy for legitimate insurance purposes. So from the pleading perspective, we've established a controversy on that question and when we get to, if we didn't get dismissed and we got into the evidentiary portion of it in summary judgment, in some jurisdictions we would have to show what the insureds subjectively believed. You don't have to do that in every case, but we just never got there. It wasn't even dismissed on an assessment of that issue. Exactly. The judge said I see no evidence of a scheme. I don't know what that meant. I mean, if nothing else, we pled a scheme here. But a point that I want to make is the damage claim. We have to go back to count. Before you go to damages, count seven, as you said, was dismissed. There wasn't a summary judgment granted on it, right? Correct. So Imperial had to move to dismiss. Yes. When you responded to that motion to dismiss, did you tell the district court that it could not lump all of your policyholders together, that it had to conduct a choice of law analysis, and the third part is, did you provide the district court with a choice of law roadmap? Yes to the first part, no to the second part. Why don't you lose then? What are you going to expect? The district court to go back and do the choice of law analysis for a dozen jurisdictions? The court should not have decided a motion that required a choice of law analysis without facts in the record from which the court could. Did you tell the district court that it needed facts to conduct a choice of law analysis? Yes. What facts? Well, they filed a motion to dismiss, and they presumed Florida law applied. We said that you can't presume Florida law applies, but even under Florida law. Where did you plead that these policies had been entered into or signed or applied for? There were not allegations of where. Let me. Even if you didn't allege it, those policies become part of the contract because they're part of your claim, so the policies were before the district court. Were they not at the time of dismissal, or they weren't? I believe they were. Under Florida law, it's lex loci contractus. It's the place where the contract was formed. With these kinds of policies, you often have an insured in one state, you have an agent, a producer in another state, you have a policy owner in a third state, you have the insurance company in a fourth state, and all of these facts have to be evaluated. There was a decision that was decided on that very question by this court last June, and it was a Sun Life policy. The lawsuit was in the Southern District of Florida. It was a Delaware trust, a Florida insured and an owner from another state, I'm not even sure where, and the whole issue is what is the right law that applies. I understand that. It had to go to summary judgment. The question that your adversary has raised is how did the district court know that this is what you wanted him to do? Because we told him. That's exactly what we told him. In our response, we said you can't decide count seven at this stage because multiple states' laws may apply, and there aren't facts in the pleading from which you can make that determination. Courts generally don't decide on a motion to dismiss a claim that's dependent on a choice of law dispute, and we have one here. We did say, but we think under Florida law we would win anyway, and at the time I thought that was correct. The Proof Code decision changes things a little bit, but we made it crystal clear, and in our briefing we addressed this multiple times at the oral argument. We actually filed when we saw their reply brief where they were continuing to hammer home Florida, Florida, Florida. We filed the reply brief and said no, it's not Florida. Let us submit a cert reply to address that question, and the judge denied it. We made it absolutely crystal clear that this was a choice of law analysis that could not be performed at that time. But did you in your response to the motion to dismiss explain all of these purported legal difficulties with doing a choice of law analysis at the 12B6 stage? We did not in the original motion to dismiss at oral argument. I definitely did, and in our motion for a cert reply I definitely did. So far you've argued that this was true as to count seven. What about counts one and two? I'm sorry? As far as the incontestability clause and the varied treatment it might be given by different states, was that part presented to the district? Yes, and that's exactly the point. If the contestable clause is not applicable because it's subject to New Jersey law, then you can't get to the counts one and two. But what about the reach of the incontestability clause, assuming it is applicable? It does not go to the types of claims we have. Bear in mind, our claim did not just involve the policies that remained in force. There were a total of 64 policies that Imperial, through this criminal scheme, acquired from Sun Life, and they selectively lapsed half of those policies. So all of the healthy people, they got rid of those policies, they stopped paying premium on them, and they kept the ones whose health was compromised. And that's what created the profitability problem from an insurance perspective. It's a lopsided risk portfolio that we were stuck with because of the fraud. And there's never been any mention about those lapsed policies, but how in the world could the contestable clause on those lapsed policies, which are as much a part of our fraud claim and our civil racketeering claim, how could they possibly be a bar to the civil racketeering and fraud claim? If you're trying to seek damages that would otherwise be barred by an incontestability provision, that's one way. But if we were – but I think the response to that is you don't get those damages. I mean, I don't think we can be held – our whole case goes away because we had a catch-all in our complaint. I mean, we wouldn't be entitled to those damages, but our primary – our claim – and it's laid out very clearly in our claim and our fraud and civil racketeering accounts that this is a profitability damage. We're seeking $16 million, not the $180 million in death benefits. That's clear. Finally, on the – if I may, the one thing we've not heard anything about, we filed this lawsuit. I think we should have won this lawsuit. I hope we will win this lawsuit. But even if we don't, it is not a breach of contract for us to file a lawsuit putting to a court the question of contract validity. It happens all the time. No court anywhere has ever indulged what Imperial is asking this court to do today. Florida has an absolute litigation privilege that applies here. Sun Life is entitled to it. The Echeverria case from 2007 says that the Florida litigation privilege applies across the board to all causes of action no matter their origin. That's what the court says. They have not found a single case where a court has permitted, even on a recognized covenant not to sue, they've not found a single case where a court has said, that can be the basis of an affirmative claim. They've cited a couple, including one from this circuit, where a covenant not to sue was used defensively. And, of course, that can be done. They did that here successfully, at least thus far. But it cannot be the basis of an affirmative claim. The closest they came was a 2005 case that predated the Echeverria case. So Sun Life has an absolute litigation privilege. We cannot be held liable for trying to vindicate our rights that are held in good faith when we go into court. Thank you. Just a moment. Thank you. That concludes the arguments for today. The court is in recess and we will reconvene tomorrow morning at 9 o'clock. Thank you.